The next case for argument is 161678 Novartis v. Noven Pharmaceuticals. Ms. Jacobson, whenever you're ready. Thank you, Your Honor. May it please the court. Charlotte Jacobson on behalf of the appellant Novartis. The question presented to the board was whether, as of 1998, a person of ordinary skill in the art would have been motivated to combine rivastigmine with an antioxidant in the ENT transdermal device. The board found that a theoretical susceptibility to oxidation would have been enough to motivate a person of ordinary skill to add an antioxidant. Your Honor, that finding was not supported by substantial evidence. And with the court's permission, I'll address the substantial evidence issue first, because if the court agrees that the board erred here, it follows that the patents in suit are not obvious. And Your Honors need not then consider whether the board also erred in finding that Elmalam, Sazaki, or rivastigmine structure suggested a potential for oxidation. Before you get to that, though, there's a lot of discussion in this case with regard to kind of what I call process issues. What is your bottom line in terms of what constraints, if any, should have been applied to the board here in light of the district court's determinations in the other case? Well, it's not Novartis' position that the board was bound by the district court decisions. But as this court stated in Baxter, where a party has lost in a finally adjudicated court patent validity decision or proceedings as Novin had here, the board ideally should not have reached a different conclusion. So where does that take you? Ideally, that phrase can be construed in different ways, I guess. And it's, of course, followed in the Baxter decision by a big word, which is called however. And it goes on to explain. So where does that – I mean, I know you rely on that phrase. Where does that lead us? I mean, I'm trying to really pin down your position about whether it's ideal or not ideal that all forms would reach the same conclusions. So what? Well, the board should not have reached an opposite conclusion without having and explaining a sound basis for doing so. Well, that's true whether or not there's a court decision out there or not. So I'm trying to glean whether it's your position that there's any difference in terms of the way we would analyze what the board did here because of the district court's other proceedings. Right. There is a difference here because the board should have recognized the findings of the district court and explained why it came to a different conclusion on the same evidence that was before the district court. Well, they didn't explain – Oh, sorry. No, go ahead. Did they do that? In the opinion at page 869, there's a paragraph where the PTAB explains why it was that it came to a different decision and talks about the standard and the burden of proof and other factors. Well, that's a very conclusory passage with respect to the Noven decision. It simply notes that there's a difference in burden and then says that they found or the board found Noven's experts to be more persuasive. Well, so there's a difference in burden and there's a difference in facts. That's an explanation. But let me give you, Your Honor, an example. So the board found that a theoretical susceptibility to oxidative degradation would have been enough to motivate the person of ordinary skill in the art to add an antioxidant. On the same evidence and listening to the same experts, the district court in Noven reached the opposite conclusion and found that theoretical susceptibility would not have been enough to make the patents obvious. So – and I'm trying to find out the answer to the question, so what? I mean, is the board not free to make findings? I mean, in addition to the fact to what Judge Stoll pointed to, which was the board explicitly drilled down on the district court, there's another however many pages of analysis, which it may not be specific to what the district court said. But doesn't that also go to – we have a thorough analysis here, do we not, about what the board, how the board construed and analyzed the evidence? There's no deficiency in and of itself by what the board did here, right? Well, there are a number of findings that were different between the board and the district court in Noven, that the board did not explain why, for example, the burden made a difference. Why the evidence that was presented to the district court did not prove that susceptibility, theoretical susceptibility was sufficient, but nonetheless it rose to the level of a preponderance of the evidence. And because the board didn't provide any explanation for that difference, it means that there's no basis for your honors and for this court to assess whether or not the board was correct to reach a different conclusion. Okay, I just want to drill down on that because, I mean, we have a lot of these cases and these parallel proceedings are coming up more and more often, so that's why I'm probing this. I'm not just trying to give you a hard time. But what, I guess, what does that mean? I mean, we have to evaluate the board's analysis here as we do in every case based on the evidence and its analysis. What I'm trying to discern is if there's a parallel proceeding in a district court case, what more, not that it might not have been helpful, not that it might not have been nice, but what more are we requiring of the board in this context in order to dislodge what otherwise may be on their face and based on their analysis seems to us perfectly okay. Is there just a different standard to be applied here? And I'm just trying to figure out what that standard is, if it's different. Well, the court and Baxter recognize that in order not to elevate the decision of the patent office over the decision of a federal court, the board should ideally not come to a different conclusion. And let's hope it doesn't snow tonight. But, I mean, that's ideally, we would all agree in every case. I mean, that's nice, but where does that get us? What does that mean that we have to apply that? Just because it's ideal doesn't mean it has any, doesn't give us any information about what effect that might have on what standards we are to apply here, different from what we would apply to an ordinary case when there's just a board proceeding we're reviewing. Right, and the additional thing that the board should be required to do is provide an explanation as to why it reached an opposite conclusion. Did they say, they said, for example, it's a very technical case, right? It is. And what they said was, we have accorded persuasive weight to the testimony of petitioners' declarants, which is different than what the district court did. I mean, that's one very strong reason, I would think, for why they came to the conclusion that they did. Right, but the board could say that in every single case, simply say the burden is different, we find the experts persuasive. But they did more than that. They did go on, as Judge Prost pointed out, they go on page A80, for example, to talk about, you know, and many other pages, to talk about why it is that they concluded the way they did on this, you know, that Sasaki would, for example, teach one of ordinary skill in the art, that there was an expectation that Enz's transdermal patch would be unstable. Right, but that finding, with respect to Sasaki, was the opposite from what the district court found. And one thing that the district court pointed to was that there were authoritative textbooks, such as Modern Pharmaceutics and Ansel, that didn't identify amines as a functional group that had the potential to oxidize. And what the board never did was explain why it credited the unexamined Japanese patent application over those authoritative textbooks, which had been material to the decision of the district court with respect to Sasaki. And so because it didn't provide any explanation or any basis for that difference, there's no analysis that would allow your honors to assess whether or not the difference in the burden justified the difference in the decision. So that's my question. Even if we were to agree with you, what are we compelled to do? If we were to fairly read the board opinion in and of itself and say this is more than sufficient, there's substantial evidence here, they did all the analysis, they went through everything in the record, and we're satisfied that reading the four corners of their opinion, it's affirmable. Are you saying that because they had a higher burden here to differentiate every finding, to explain every different finding they had from the district court, and talk about that and explain how the burden explains the difference here, and given their failure to do that, is that a basis for reversing their opinion? I'm just trying to figure out, what do we do with that? Even if we agree with everything you're saying, what do we do with that? Well, your honors, if you agree that all of the findings are supported by substantial evidence, then it follows that the board was justified in departing from the district court. But the board hasn't provided... Is that the standard, though? Is the standard whether there's substantial evidence to support what the board did, or is the standard we are to apply on review, was the board here justified? And I don't know what standard that justification takes on, but was the board justified in its disagreements with the district court? This is a district court opinion, by the way, which we didn't review this case, right? Not on this record. There's no federal circuit opinion. No, there's no, but it's a final district court decision because it hasn't been appealed. So tell us how, what level of justification is, if a level of justification is required, what standards we are to apply to inform that? Your honor, I think that that justification would need to be supported by substantial evidence. It would be a finding of fact that there is a difference between the district court, the evidence before the board and the district court, that would have justified the departure from this court's guidance in Baxter and then the Novan district court decision. You're in your rebuttal. You want to sit down? We'll hear from the other side. Thank you. Ms. Lynch, it appears you're the last person standing on this side of the table. May it please the court. This case isn't about the relative primacy of the board and the courts. It's simply one of those cases where the board's application of a lower standard of proof, preponderance of the evidence, resulted in a different decision than that reached by the district court. And different evidence, too. Novartis spends a lot of time on the Baxter case. And this one sentence that when there's the same presentations and arguments, ideally the board should not come to a different conclusion than a district court. But it was Novartis' burden to show that it was the same presentations and arguments, and the board found that it wasn't the same presentations and arguments. Only with respect to Watson, right? Only with respect to the Watson decision. I think with respect to the Novan decision, the PTAB actually recognized that it was the same evidence. Am I right about that? It was the same art that the board relied on, but not the same evidence. Because new declarations were put in. By the same experts. Same experts. Same experts. And in a sort of backwards way, the reply rate concedes they're different by saying they're substantively the same. Right. But the board actually said that there was different presentations and arguments. And then getting to Chief Judge Prost's questions about what the courts should do here, and is there something you need to do beyond looking to whether the board's fact findings were supported by substantial evidence? Well, it's helpful that the board had something, as Judge Stoll pointed out, that they did recognize and at least discuss at some level the district court's conclusions, right? Correct. So the question maybe begs the question of how much they needed to do, if anything, to satisfy us when there's a parallel proceeding involving, let's assume for the sake of argument, that the records are substantially the same. Correct. And the board did here look to the district court decisions. But we have a charter from Congress to do our own patentability determinations and to do an independent patentability analysis. That is what the board did. Applied the appropriate standard of proof. And I want to read something in Baxter, which says specifically that the board doesn't have to do kind of this side-by-side comparison that Novartis is asking for to say, for every finding the board has, please compare it to what the district court said and tell us why you came to a different one. If you look at page 1365 of In Re Baxter in the paragraph that begins, in contrast, the last sentence says, thus, because the two proceedings necessarily applied different burdens of proof and relied on different records, the PTO did not err in failing to provide the detailed explanation now sought by Baxter as to why the PTO came to a different determination. But it's a lot easier, a lot more apparent when the records are significantly different, when there's different prior art cited, where there are different experts that say different things. That's a lot easier. It is easier, Your Honor. But here, the board went through all of the art, explained what it thought the art taught a person of ordinary skill in the art, and came to its conclusion. I don't think there's any requirement for the board to go line by line and say, well, the district court said this, we say this. Well, there's one thing that's bothering me a bit, and your friend didn't really rely heavily on it here, although I think it's in the briefs, which is this aspect of credibility determinations. Because what if, hypothetically, you have a district court proceeding, and the district court hears the witnesses? And I think expert testimony is a little different, because sometimes credibility mixes up the extent to which they had a significant scientific basis for coming to their conclusions. But what if it was what we typically think of as credibility? Like this guy started to sweat on cross-examination, and it was just apparent to me sitting there listening to him that he was lying based on his demeanor and the way he was twisting in his seat. So it's really a traditional kind of credibility determination. What if the district court had significantly relied on her conclusions in that regard in reaching the result here? Would the board have to sort of take note of that in any way, shape, or form, or not? I don't think the board would, Your Honor, because we have our own proceedings, and Congress has set them up, and they are pretty much on the paper. There are instances where the board can hear oral witnesses, but pretty much they're on the paper. What happens when the prior litigant comes in and says, well, wait a minute, by affidavit attached is a copy of the district court opinion in which they find this person to be an abject liar? Or refer them for perjury prosecution, let's make it really good. And so surely in some fashion that's brought to the board. Correct, and the board can take note of that, but we're not bound by district court credibility determinations. If we were, then in re-exams we could never find patents unpatentable because re-exams are on the paper, right, even when there had been a district court decision. So, I mean, we, under our charter from Congress, this is what we do. You'd have to address it, though, right? Like maybe say something like, for example, the district court found this expert's testimony not to be credible because whatever reason, but we, with our independent assessment, given our technical backgrounds, have read this reference and read it differently. At least some sort of explanation, right? I don't know that they would be absolutely required to do that, but I think that would be the better course. And in this case they did look at, there's no question that they looked at the Novan district court decision and the Watson federal circuit and district court decision. Maybe it was one of the other briefs on the other side, but I thought someone made the additional argument in response to the question I was posing that there is the ability under your proceedings to bring in live testimony. Am I wrong about that? No. Is there ability? There is an ability and Novartis did not ask for it. And so one of the answers might be that if this guy, if you saw a person, you'd know in five seconds that this guy was a liar. If that were the view of the other case in this hypothetical we're talking about, they had the ability to at least ask. Not that we may have said no, but they have the ability. Correct. And that would make sense, Rhonda, that you would maybe put that in a motion and say, in this case, we do think testimony would be useful because of what happened in the district court. Are you familiar with the power integrations case? That's the one I don't think it's been cited by the parties here, but that's one where this court, I think there was a district court decision that interpreted claims one way. And then when it was before the board, the board had a different interpretation. And this court remanded for the board just to make sure that it was clear that the board considered the district court's interpretation and address it in an opinion. Right. And we feel like in this case, the board certainly did that. It looked at both the Novan district court case and the Watson case. So we believe the only question before this court is whether the board's fact findings are supported by substantial evidence and its conclusion are correct as a matter of law. I have one more question. I'm sorry, I forgot. I just was wondering about, I saw that there was some emphasis in the briefs on the board's definition of one of ordinary skill in the art and that that was not contested by Novartis. I was wondering if you knew, was that the same definition that was relied on in the district court? I apologize, Your Honor, I don't know. That's not something we agree. Thank you. Your Honor, in reply, I just want to focus on two points. The first is that the prior art of record was the same between the Novartis court and the proceedings before the board, as this court pointed out. And the part of the Baxter decision that the PTO pointed to makes clear that the record was different between the PTO proceedings and the court proceedings. And that was why the court in Baxter did not require a detailed explanation of the different outcomes in those two cases. The court in Baxter then went on. But you're mixing prior art and record. I know you're not doing that by accident. Well, so the prior art was, there's no dispute that the prior art was the same. But the record was different, wasn't it? Not substantively. There is no evidence that has been pointed to. That's what I referred to in your footnote 11 as backing into conceding that it was different. Well, it's a form of a substance, Your Honor. The form of the record was different, but the testimony wasn't. Neither the PTO, nor the board, nor Novan has pointed to any difference in testimony from the experts between what they said in the court and what they said in their declarations. Now, with respect to the art of record, there were a couple of different references that were before the board, but none of them were relied on by the board in reaching its decision. And in fact, none of them were even properly before the board because they were only cited in declarations of the experts. And therefore, under the procedure with the board, they're not. So the way we wait, wait, wait, wait, wait, wait. The declarations of Dr. Kandaceous, Dr. Schoenbach, and Dr. Kleibanov were before the court. No, the declarations were only before the board, but they were the exact same experts that testified before the court. And then Novan pointed to... Do we know if the substance of their testimony, the testimony versus the declarations were different? It was different. Because I'm turning to the record to look to see where they said it was different. The board said it was different. Only between the Novan case, Your Honor. The board did not identify any differences between the testimony at the district court and before the board from these same three experts in the Novan proceedings in the two jurisdictions. And Novan, in their brief, did not identify any difference in the testimony, and the PTO has not identified any difference in the testimony offered by these experts. Well, I think the PTO may have said something that suggested that it may have been your burden and not theirs if there's a difference in the record to call that out. And we submit that there was not a difference in substance between the testimony that was given at the court and in the written declarations. And the second point is, and I wanted to emphasize, is the court, the district court, saw and heard these experts testify. And having heard these experts testify, the district court made an express finding that Dr. Klebanoff-Novartis' expert was more credible than both of Novan's experts, Dr. Kedonius and Dr. Schoenike. Do we know why? Did the district court provide us a why? It was not based on demeanor, was it? It was based on the scientific basis for what he was saying, or what? I don't recall exactly what the district court said. The district court did not expressly say it was because of the demeanor of the witness. But certainly when assessing credibility, demeanor, and the substance of what the expert is testifying about is what the court will consider when it reaches a finding as to credibility. And in this case, the district court found Dr. Klebanoff more persuasive, more credible. The board, on the other hand, without providing reasons, found that Dr. Klebanoff's testimony was not persuasive. And then it proceeded on the Elmer Lem reference to make its own conclusion about what that reference would have taught a person of ordinary skill in the art that was not supported by either side's expert. It was its own independent conclusion as to what that reference meant. Earlier, you referred to a theoretical possibility. I don't see that language in the board's decision. Where is that in the board's decision? Well, the board makes clear that it talks about susceptibility to oxidation. But the board recognizes that that susceptibility does not mean that the drug is going to undergo oxidative degradation under pharmaceutically relevant conditions. Where does it say that? I just didn't see. I think that's had the board actually articulated a standard like, we think it's susceptible, or it's possible. Then maybe that would be a pretty strong argument. But their argument seems to be that one of ordinary skill in the art would appreciate from Sasaki that there is a problem, there is an oxidation problem in the end product. So at A86, the board acknowledged that whether a compound degrades needs to be shown experimentally. And that was undisputed by Noven's experts. In fact, they admitted that that was the case. At A87, Your Honor, the board goes on and says it is the susceptibility, i.e., the predicted potential for oxidative degradation that provides the motivation to address the problem. And then if you look at A88, the board's ultimate conclusion with respect to Entz and Sasaki is that a POSA would have predicted that the transdermal formulation disclosed by Entz was susceptible to oxidative degradation. So what's wrong with that? I think here they were pushing back, and the briefs get into this stance too, pushing back between whether it was able to predict absolutely or whether it was sufficient. And here the board makes a finding which is supported on A88, which is discussed and supported by the previous pages. So what's the problem with that? The problem is that those findings were not supported by substantial evidence. There was no evidence of record that a predicted potential or a theoretical susceptibility for oxidation would have been sufficient to motivate a person of ordinary skill in the art to add an antioxidant. Instead, the record evidence shows that a person of ordinary skill in the art would only have been motivated to solve a known degradational stability problem. As the age-old adage goes, if it ain't broke, don't fix it. But I think Judge Stowe, maybe I misunderstood. I thought she was asking about what you just said again, which is a theoretical possibility. And is that language used by the board? It's not. It's the way that we try to explain the difference between susceptibility and actually having a degradation problem. Because it was undisputed that even a compound that is susceptible to oxidative degradation may not degrade at all under pharmaceutically relevant conditions. And Noven's expert, Dr. Schoenig, admitted that even in a compound that has a bond that could be oxidized or that is weaker than others, that doesn't mean that the drug will undergo oxidative degradation. It doesn't tell you what conditions will be required to cause that drug to degrade. And in fact, take the example of dextromethorphan. I'll give you one more sentence. I know you're responding to questions, so I appreciate you went over time. But one sentence. Okay, sorry. The example of dextromethorphan is very informative. Under the theory... That was a sentence. Sorry. That was a drug that should have been susceptible to oxidation, and yet it was reported to be very stable under pharmaceutically relevant conditions and was not formulated with an antioxidant. And that well illustrates the difference between a theoretical susceptibility and an actual degradation problem. Thank you. We thank both sides. The case is submitted.